# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
### DALLAS DIVISION

| | | |
|---|---|---|
| GENERATION TRADE, INC., | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. 3:18-CV-0434-K |
| | § | |
| OHIO SECURITY INSURANCE | § | |
| COMPANY, | § | |
| | § | |
| Defendant. | § | |

## MEMORANDUM OPINION AND ORDER

Before the Court is Defendant's Motion for Summary Judgment (the "Motion for Summary Judgment") (Doc. No. 22), Plaintiff's Motion for Leave to File Surreply to Defendant's Motion for Summary Judgment (the "Motion for Leave") (Doc. No. 41), Plaintiff's Motion to Limit and Exclude the Testimony of Timothy Marshall (Doc. No. 45), Plaintiff's Motion to Exclude the Expert Testimony of Marshall Lafon (Doc. No. 46), and Defendant's Motion to Limit and Exclude the Testimony of Kelly Parker, Dan Mizell, and Sean Harshaw (Doc. No. 47). After considering the briefs, responses, replies, and applicable law, the Court **GRANTS** the Motion for Summary Judgment because Plaintiff Generation Trade, Inc. failed to present evidence that would provide a jury a reasonable basis to allocate damages covered by the insurance policy from potential damages before the insurance policy's coverage period. As detailed further below, the Court **DENIES** Plaintiff's Motion to Limit and Exclude the Testimony of

Timothy Marshall (Doc. No. 45) and Defendant's Motion to Limit and Exclude the Testimony of Kelly Paker (only) (Doc. No. 47), and because the remaining motions concerning witness testimony are not necessary for the Court's summary judgment determination, the Court **DENIES** these motions as moot (Doc. Nos. 46, 47). Lastly, the Court **DENIES** Plaintiff's Motion for Leave (Doc. No. 41) because (1) the Court grants summary judgment in favor of Defendant Ohio Security Insurance Company on a basis raised in its original motion and (2) any new evidence or case law cited by Defendant Ohio Security Insurance Company in its reply is irrelevant to the Court's analysis in this Order.

## I. Factual and Procedural History

The case before this Court involves a dispute concerning insurance coverage related to hail damage to a warehouse facility (the "Property") located in Irving, Texas. Plaintiff Generation Trade, Inc. ("Generation Trade") bought the Property in 2014, and, from the time of purchase, Generation Trade has insured the Property through a policy with Defendant Ohio Security Insurance Company ("OSIC"). Although Generation Trade has insured the Property since Generation Trade acquired it, the Property was originally built in 1981. A 24-gauge metal roof covers the entire Property, except for a small portion of the roof installed in May 2016 that is 26-gauge metal. Both parties agree that the insurance policy at issue in this case covers hail damage to the roof. The parties also agree on the language and the applicable policy provisions.

In July 2017, Andre Simon ("Simon"), the owner of Generation Trade, observed hail damage to the roof of the Property. Simon immediately reported the damage to OSIC. OSIC assigned Joseph Hinkson ("Hinkson") to inspect the Property, and Hinkson determined that there was hail damage to the roof exceeding $1,000,000. OSIC then assigned Marshall Lafon ("Lafon"), a large loss adjuster, to further investigate the damage to the roof of the Property. Lafon acknowledged that there was hail damage to the roof of the Property, but after reviewing a weather report for hail events over a certain period of time, Lafon had questions about whether some of the hail damage predated the policy's period of coverage.

OSIC then hired Henry Yang ("Yang"), a professional engineer with Rimkus Consulting Group, Inc., to further analyze the hail damage to the roof of the Property. Yang concluded from his investigation that the hail damage to the portion of the roof consisting of 26-gauge metal would have necessarily occurred after May 2016, as Generation Trade installed this portion of the roof in May 2016; however, Yang concluded that the damage to 24-gauge metal roof occurred over time since 1981, and Yang could not identify when and what hail events caused the damage to this portion of the roof. (Generation Trade cites Yang's reports as proof that Yang concluded that the damage to the 24-gauge metal roof occurred prior to policy coverage, but Yang's conclusions in both versions of the two reports he submitted only finds that the damage "occurred throughout the years, since 1981.")

Shortly after Yang submitted his second report, OSIC sent Generation Trade a letter in which it denied Generation Trade's insurance claim. In its letter, OSIC explained that the insurance policy covered the damage to the newer, 26-gauge metal roof, but the total expense for repair to that portion of the roof did not exceed the policy's deductible. OSIC thus denied Generation Trade's insurance claim, relying upon Yang's conclusion that the hail damage to the 24-gauge metal roof could have predated the period of policy coverage because it "occurred throughout the years, since 1981."

Generation Trade initiated this case in state court approximately a month after OSIC denied Generation Trade's claim. OSIC retained Timothy Marshall ("Marshall") as its testifying engineer for this case. Marshall inspected the property once and submitted two reports concerning his findings. Marshall found that weather data indicated hail events of varying magnitude occurred both before and during the policy coverage period; however, Marshall stated that he cannot opine as to which specific hail event caused any of the damage. Prior to the initiation of this suit, Generation Trade hired Kelly Parker ("Parker"), who inspected the property and issued a report in October 2017. The Court will address the opinions and conclusions of Marshall and Parker in more depth throughout this Order.

Generation Trade filed its original petition for this suit in state court on January 11, 2018. Generation Trade amended its petition on February 9, 2019 to name OSIC

as defendant instead of Liberty Mutual Insurance Company. OSIC removed the case to this Court on February 21, 2018. OSIC moved for summary judgment on October 26, 2018, and shortly after moving for summary judgment, OSIC moved for leave to amend its answer to include the affirmative defense that Generation Trade failed to provide prompt notice of its claimed loss. Finding no undue delay or undue prejudice, this Court granted OSIC's motion for leave to amend its answer and allowed OSIC to include this affirmative defense. In its Motion for Summary Judgment, OSIC argues that because Generation Trade either (1) cannot segregate its covered damages from its uncovered damages or (2) failed to provide prompt notice of its loss, summary judgment in favor of OSIC is appropriate for Generation Trade's breach-of-contract claim. OSIC further argues that because Generation Trade did not suffer an injury independent from the insurance policy, and because there is no viable claim for negligent claim handling, summary judgment in favor of OSIC is appropriate on Generation Trade's Texas Insurance Code and negligence claims. Finally, OSIC argues that summary judgment on Generation Trade's request for attorneys' fees is appropriate because Generation Trade failed to provide the requisite pre-suit notice to OSIC before Generation Trade filed its action.

## II. Applicable Law

Summary judgment is appropriate when the pleadings, affidavits, and other summary-judgment evidence show that no genuine issue of material fact exists and the

moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). A "material fact" is a fact that under the applicable substantive law "might affect the outcome of the suit." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute of "a material fact is 'genuine' . . . if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* All evidence and reasonable inferences must be viewed in the light most favorable to the nonmovant, and all disputed facts resolved in favor of the nonmovant. *See United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962); *Boudreaux v. Swift Transp. Co.*, 402 F.3d 536, 540 (5th Cir. 2005).

The moving party bears the burden of identifying those portions of the record it believes demonstrates the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 322–25. Once a movant makes a properly supported motion, the burden shifts to the nonmovant to show the existence of a genuine fact issue for trial; however, the nonmovant may not rest upon allegations in the pleadings to make such a showing. *Anderson*, 477 U.S. at 256–57. Conclusory allegations, unsubstantiated assertions, or a mere scintilla of evidence cannot defeat a motion for summary judgment. *See id.* at 249–52; *Boudreaux*, 402 F.3d at 540. "Where critical evidence is so weak or tenuous on an essential fact that it could not support a judgment in favor of the nonmovant, or where it is so overwhelming that it mandates judgment in favor of the movant, summary judgment is appropriate." *Alton v. Tex. A&M Univ.*, 168 F.3d 196, 199 (5th

Cir. 1999). If the nonmovant fails to make a sufficient showing to prove the existence of an essential element to the case and on which the nonmovant will bear the burden of proving at trial, summary judgment must be granted. *Celotex*, 477 U.S. at 322. The nonmovant must cite specific facts in the record to survive a motion for summary judgment, as "Rule 56 does not impose upon the district court a duty to sift through the record in search of evidence to support a party's opposition to summary judgment." *Adams v. Travelers Indem. Co. of Conn.*, 465 F.3d 156, 164 (5th Cir. 2006) (quoting *Ragas v. Tenn. Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998)); *see* FED. R. CIV. P. 56(c)(3).

### III.    Analysis

Before the Court can address the substantive issues raised in the Motion for Summary Judgment, the Court must first address the motions from the parties seeking to limit and exclude testimony from various witnesses. Between the two parties, there are three motions addressing five witnesses; however, as the Court explains in its analysis below, only the motions seeking to limit and exclude the testimony of Timothy Marshall and Kelly Parker are relevant for purposes of this Order. After addressing these motions, the Court then turns to the substantive arguments of the Motion for Summary Judgment. The Court finally turns to the Motion for Leave.

## A. The Motions to Limit and Exclude Testimony

Generation Trade and OSIC have both filed motions seeking to limit and exclude the testimony of five witnesses. Generation Trade seeks to limit and exclude the testimony of Timothy Marshall and Marshall Lafon. OSIC seeks to limit and exclude the testimony of Kelly Parker, Dan Mizell, and Sean Hershaw. The bulk of the arguments for both parties concern the witnesses' testimony about causation. As the Court's analysis on the Motion for Summary Judgment pertains solely to causation and Generation Trade's failure to segregate its damages, the Court analyzes these motions to limit and exclude testimony to the extent necessary to address the issue of Generation Trade's failure to segregate damages, which is the dispositive issue of this case. The Court need not address other issues in these motions to the extent such issues do not relate to the issue of segregating damages or to the extent a witness's testimony is unnecessary or irrelevant to the Court's analysis in this Order. Consequently, the most important motion related to witness testimony is Generation Trade's motion directed at limiting and excluding the testimony of Timothy Marshall.

Generation Trade moves this Court to limit and exclude Marshall's testimony to the extent necessary to prevent Marshall from (1) testifying as to the date damage occurred to the Property and (2) "transform[ing] hearsay meteorological data into opinion," *inter alia*. Generation Trade argues that, as related to these points of testimony, (1) "Marshall is not qualified by education, training, or experience to opine

on [these] issues" and (2) "his testimony lacks proper foundational evidence." (Generation Trade's request to limit and exclude testimony concerning the reasonable and necessary costs to repair or replace the damaged roof, as well as testimony concerning the "FM 4471 testing," are irrelevant for purposes of this Order. Likewise, because Generation Trade's argument that OSIC did not properly or timely disclose or designate Marshall relates only to Marshall's opinions as to the FM 4471 testing and the cost to repair or replace damages, the Court need not consider this argument either.)

The Court addresses each of Generation Trade's arguments for why the Court should limit and/or exclude Marshall's testimony in turn. First, the Court disagrees with Generation Trade's position on Marshall's qualification and finds that Marshall is qualified to testify on the issues to the extent that he does. As OSIC points out repeatedly throughout its filings, its position is not that Marshall must testify as to the storm or storms that caused the damage to the Property. Instead, OSIC only desires for Marshall to testify as to what storms *could* have caused the damage to the Property. Marshall may not be qualified to testify as to what specific storm caused what exact damage to the Property; however, that level of qualification and expertise is not the issue the Court faces in the Motion for Summary Judgment. Based on Marshall's education, training, experience, and publications, as well as the information and data reviewed by Marshall in formulating his opinions regarding the damage to the Property,

the Court finds that Marshall is qualified to testify in the field of meteorology on the issue of causation to the extent that his testimony focuses on identifying storms that could have damaged the Property. Such testimony is what OSIC presents from Marshall in its summary-judgment evidence.

As to Generation Trade's objection to Marshall "transform[ing] hearsay meteorological data into opinion," the Court finds that because Marshall is qualified to testify as an expert to the extent the Court has found appropriate, reliance upon meteorological data is permissible as well. Use of meteorological reports like the ones relied upon in this case is common practice. *See, e.g.*, *Certain Underwriters at Lloyd's of London v. Lowen Valley View, L.L.C.*, Civ. Action No. 3:16-cv-0465-B, 2017 WL 3115142, at *3, *11 (N.D. Tex. July 7, 2017) (Boyle, J.) *aff'd*, 892 F.3d 167 (5th Cir. 2018). Marshall may rely upon these meteorological reports in formulating his expert opinion.

Therefore, the Court **denies** Plaintiff's Motion to Limit and Exclude the Testimony of Timothy Marshall (Doc. No. 45) because the Court finds Marshall qualified to testify as an expert to the extent he does on the issue of causation.

The Court **denies as moot** Generation Trade's other motion directed at Lafon, as the Court does not rely upon evidence from Lafon in an expert capacity. The parties' dispute concerning Lafon's testimony is whether certain testimony is expert testimony despite OSIC never designating Lafon as an expert. The parties do not dispute Lafon's

ability to testify as a fact witness. As the Court's analysis in this Order does not address the issues of prejudice or damages, and the Court relies solely upon Marshall's testimony as to the issue of causation, the Court **denies as moot** Plaintiff's Motion to Exclude the Expert Testimony of Marshall Lafon (Doc. No. 46).

OSIC concedes in its motion to limit and exclude the testimony of Kelly Parker, Dan Mizell, and Sean Harshaw that it is making a "what is good for the goose is good for the gander" argument. Of these three individuals, Generation Trade only relies upon the testimony of Parker on the issue of causation in its response to the Motion for Summary Judgment. For the reasons explained above concerning the motion to limit and exclude Marshall's testimony, the Court finds that Parker is qualified to testify as to causation; however, to the extent proffered summary-judgment evidence from Parker is not "competent," the Court addresses issues with such evidence in its analysis of the Motion for Summary Judgment below. The Court therefore **denies** Defendant's Motion to Limit and Exclude the Testimony of Kelly Parker, Dan Mizell and Sean Harshaw (Doc. No. 47) as it relates to the testimony of Kelly Parker.

Generation Trade does not rely upon evidence from Dan Mizell and Sean Harshaw on the issue of causation in its response to the Motion for Summary Judgment. The Court notes that Generation Trade does cite to the deposition of Dan Mizell on the issue of causation in its proposed surreply; however, as the Court discusses below, the Court denies Generation Trade's Motion for Leave. The Court

therefore **denies as moot** Defendant's Motion to Limit and Exclude the Testimony of Kelly Parker, Dan Mizell and Sean Harshaw (Doc. No. 47) as it relates to the testimony of Dan Mizell and Sean Harshaw.

## B. Motion for Summary Judgment

OSIC moves for summary judgment on Generation Trade's breach-of-contract claim on two, alternative grounds. Finding that OSIC has a right to summary judgment based on Generation Trade's failure to segregate its damages, the Court does not address OSIC's alternative ground. The Court then addresses Generation Trade's Texas Insurance Code claims, negligence claim, and request for attorneys' fees and explains why summary judgment in favor of OSIC is appropriate on these claims and request as well.

### 1. Generation Trade's Breach-of-Contract Claim

"In Texas, insurance policies are contracts subject to the rules of contract construction." *Certain Underwriters at Lloyd's of London v. Lowen Valley View, L.L.C.*, 892 F.3d 167, 170 (5th Cir. 2018) (citing *Mid-Continent Cas. Co. v. Swift Energy Co.*, 206 F.3d 487, 491 (5th Cir. 2000)). "The elements of a breach of contract action under Texas law are: '(1) the existence of a valid contract; (2) performance or tendered performance by the plaintiff; (3) breach of the contract by the defendant; and (4) damages sustained by the plaintiff as a result of the breach.'" *Id.* (quoting *Smith Int'l, Inc. v. Egle Grp., LLC*, 490 F.3d 380, 387 (5th Cir. 2007)). "The insured bears the

burden of establishing that its claim is covered by the policy." *Id.* (citing *Wells v. Minn. Life Ins. Co.*, 885 F.3d 885, 890 (5th Cir. 2018)).

"When covered and excluded perils combine to cause an injury, the insured must present some evidence affording the jury a reasonable basis on which to allocate the damage." *Lyons v. Miller Cas. Ins. Co. of Tex.*, 866 S.W.2d 597, 601 (Tex. 1993). The insured can satisfy this "some evidence" standard by providing circumstantial evidence, as expert testimony on the issue of allocation is not necessary to survive summary judgment. *See id.* The insured does not have to present "overwhelming evidence that would allow a jury to flawlessly segregate" covered damage from non-covered damage to satisfy this "some evidence" standard. *Fiess v. State Farm Lloyds*, 392 F.3d 802, 808 (5th Cir. 2004). However, despite this relatively low evidentiary burden concerning the allocation of damages, "the burden of segregating the damage attributable solely to the covered event is a coverage issue for which *the insured carries the burden of proof*." *One Way Invs., Inc. v. Century Sur. Co.*, Civ. Action No. 3:14-CV-2839-D, 2016 WL 5122124, at *2 (N.D. Tex. Sept. 21, 2016) (Fitzwater, J.) (emphasis added). The insured's evidence must provide a "reasonable basis" for the jury to allocate what portion of damage is attributable to a covered loss under the policy. *Travelers Indem. Co. v. McKillip*, 469 S.W.2d 160, 163 (Tex. 1971). "[F]ailure to segregate covered and noncovered perils is fatal to recovery." *One Way Invs., Inc.*, 2016 WL 5122124, at *2 (quoting *Comsys Info. Tech. Servs., Inc. v. Twin City Fire Ins. Co.*, 130 S.W.3d 181, 198

(Tex. App.—Houston [14th Dist.] 2003, pet. denied)). "[This] doctrine of concurrent causation is not an affirmative defense or an avoidance issue; instead, it is a rule embodying the basic principle that insureds are not entitled to recover under their insurance policies unless they prove their damage is covered by the policy." *Comsys Info. Tech. Servs., Inc.*, 130 S.W.3d at 198.

OSIC concedes that hail damage is covered loss under the terms of the applicable insurance policy in this case. OSIC instead argues that some of the damage to the roof of the Property could have been caused by hail damage prior to the inception of the insurance policy, and therefore Generation Trade must provide a reasonable basis on which the jury can allocate covered (i.e., post-inception of insurance policy) and non-covered (i.e., pre-inception of insurance policy) hail damage.

The Fifth Circuit and courts in this district have had the opportunity to address the issues of concurrent causation and segregating damages when questions arise about whether a hailstorm prior to an insurance policy's inception caused some of the claimed damage. *See, e.g.*, *Certain Underwriters at Lloyd's of London*, 892 F.3d at 170–72; *Hamilton Props. v. Am. Ins. Co.*, 643 F. App'x 437, 441–42 (5th Cir. 2016); *Sheffield v. Allstate Vehicle & Prop. Ins. Co.*, Civ. Action No. 4:17-cv-00471-O-BP, 2018 WL 4076513, at *2–*3 (N.D. Tex. July 3, 2018) (Ray, M.J.); *Certain Underwriters at Lloyd's of London*, 2017 WL 3115142, at *8–*11; *One Way Invs., Inc.*, 2016 WL 5122124, at *2; *Hamilton*

*Props. v. Am. Ins. Co.*, Civ. Action No. 3:12–CV–5046–B, 2014 WL 3055801, at *4–*7 (N.D. Tex. July 7, 2014) (Boyle, J.).

The parties first dispute what OSIC's burden is to prove a non-covered loss and whether OSIC has in fact met the applicable burden. In more precise terms for purposes of this case, the parties are disputing whether OSIC's expert, Marshall, can simply opine that potential hail events *could have* caused some of the damage to the Property based upon various weather reports indicating hail events in the vicinity of the Property that occurred prior to the insurance policy's inception. As the Court previously addressed in this Order, it is proper for Marshall to rely upon these weather reports in opining that various weather events involving hail over a certain size *could have* caused some damage to portions of the roof of the Property. *See Certain Underwriters at Lloyd's of London*, 2017 WL 3115142, at *9 (explaining how the insurer relied upon the insured's own weather reports as evidence of "hail events outside of the policy period that *could have* caused the damage" (emphasis added)); *Hamilton Props.*, 2014 WL 3055801, at *2, *6 (explaining that the insurer "reviewed historical weather data" and that such data was "evidence to suggest that the damage . . . *could have* been the result of non-covered perils" (emphasis added)); *see also Certain Underwriters at Lloyd's of London*, 892 F.3d at 170–71 ("The summary judgment evidence reveals that several hail storms struck the vicinity of the hotel in the several years preceding Lowen Valley's claim. Only one of these storms fell within the coverage period. The district court held

that Lloyd's was entitled to summary judgment because the record lacked reliable evidence permitting a jury to determine which of these storms—alone or in combination—damaged the hotel. We agree."). Generation Trade's own expert, Parker, relies upon a Maxcon Hail Report and a StormerSite Hail History Report in determining that the date of loss was July 4/5, 2016. The latter of these two reports identifies comparable hail events occurring prior to the insurance policy's inception. GT APP. 000958. Reliance upon these reports is not reliance upon "unconfirmed rumors of loss," as Generation Trade would suggest. *See Stagliano v. Cincinnati Ins. Co.*, 633 F. App'x 217, 219 (5th Cir. 2015) (explaining how "a single conclusory expert affidavit" failed to meet an insured's burden concerning causation). Furthermore, a conclusion that certain hail events *could have* caused some of the observed damage to the Property is enough to shift the burden to Generation Trade. *See Hamilton Props.*, 2014 WL 3055801, at *6 (holding that when the insurer produced evidence that the damage "could have been the result of non-covered perils," including a hailstorm prior to the insurance policy's coverage period, the burden shifted to the insured "to provide 'evidence [to] allow the trier of fact to segregate covered losses from non-covered losses'" (quoting *Fiess*, 392 F.3d at 807)). The Court finds that Marshall's testimony—that various hail events that occurred prior to the inception of the insurance policy could have caused some of the damage to the Property—is sufficient to shift the burden

to Generation Trade to provide some evidence to afford a jury a reasonable basis to segregate covered damages from non-covered damages.

Because the Court finds that OSIC has produced evidence that a non-covered hail event could have caused some of the loss to the roof of the Property, "the burden has shifted to [Generation Trade] to provide 'evidence [to] allow the trier of fact to segregate covered losses from non-covered losses.'" *Id.* (quoting *Fiess*, 392 F.3d at 807). More specifically, Generation Trade's burden is to "present some evidence affording the jury a reasonable basis on which to allocate the damage." *Lyons*, 866 S.W.2d at 601. While Generation Trade produces some evidence to support its contention that some of the damage to the roof of the Property is attributable to the July 4/5, 2016 hailstorm, the Court finds that Generation Trade fails to "present some evidence affording the jury a *reasonable basis on which to allocate the damage*." *Id.* (emphasis added). Failure to satisfy this burden precludes Generation Trade from recovering on its breach-of-contract claim. *One Way Invs., Inc.*, 2016 WL 5122124, at *2.

Generation Trade's ability to segregate covered damages from non-covered damages effectively depends upon the testimony of its expert, Parker. In his report, Parker determined that hail over 1" in size impacted both the older 24-gauge metal roof and the newer 26-gauge metal roof. Upon reviewing weather data, and taking into account the May 2016 installation of the 26-gauge metal roof, Parker concluded that "[t]he most probable date of loss [was] July 4/5, 2016." GT APP. 000929. Parker

emphasized that the consistency of the size and frequency of the hail dents across both the 24-gauge and 26-gauge metal roof indicated that July 4/5, 2016 was the most probable date of loss.

These conclusions are all inconsequential for OSIC because, while these conclusions provide some evidence that the entire roof was damaged by a covered hailstorm, these conclusions do not set forth some evidence that would provide the jury a reasonable basis to segregate covered from non-covered loss. Parker's conclusions demonstrate that there was damage to the Property's entire roof as a result of a storm subsequent to the installation of the 26-gauge roof; however, Parker's conclusions provide no method to differentiate covered versus non-covered hail damage on the 24-gauge roof. In other words, OSIC can concede that there is damage to the entire roof of the Property because of a covered hailstorm; Generation Trade's claim will still fail because it is Generation Trade's burden to segregate the covered from the non-covered damage on the 24-gauge roof. (As mentioned in the factual background of this Order, OSIC admitted that the damage to the 26-gauge roof was covered loss—as Generation Trade could effectively segregate these hail dents because of when the 26-gauge roof was installed—but the estimated loss for that portion of damage fell below the insurance policy's deductible.) In coming to its conclusion, the Court addresses the evidence that Generation Trade argues is some evidence that could provide a reasonable basis for the jury to segregate damages.

The Court first turns to Parker's report and deposition testimony, in which Parker speaks to the consistency in size and frequency of hail impacts across the entire roof (i.e., the 24-gauge and 26-gauge portions of the roof). Generation Trade in turn argues that this conclusion in Parker's report "is some evidence on which a jury could rely for purposes of determining that the entirety of the observed damage occurred during the coverage period." Although this argument by Generation Trade appears on its face persuasive, Parker's deposition testimony provides a fuller context that clarifies that while Parker's conclusion concerning the consistency in size and frequency of hail impacts across the entire roof is some evidence that a covered hailstorm damaged the 24-gauge roof, it does not provide some evidence for a jury to have a reasonable basis to segregate damages from both covered and non-covered hailstorms. First, as OSIC repeatedly points out in its briefs, Parker testified in his deposition that there was a high probability that hail events prior to the July 4/5, 2016 hailstorm damaged the 24-gauge panel to some extent. GT APP. 001181, 001186. Second, in explaining his conclusion concerning the size and frequency of hail dents across the roof of the Property in his report, Parker explained in his deposition that he cannot link certain dents to certain hail events. GT APP. 001190–91. Instead, Parker states that a similar dent is indicative of similar hail size and density, among other potential conditions, as opposed to hail from the same hailstorm. Parker in fact refused to explicitly testify as to whether a person could identify a particular storm responsible for all similar hail

dents. When posed directly with the question about whether he could tell the jury how many dents on the 24-gauge panel occurred on July 4/5, 2016 versus an earlier date, Parker testified that "nothing anybody could do could correlate 26 [gauge] to 28 [sic] [gauge] with a reasonable degree of engineering certainty and tell you that those occurred at the same time or different times." GT APP. 001191. Part of the difficulty posed in making such a determination is that the dent from an identical piece of hail might produce a different size dent on the thinner 26-gauge roof as compared to the thicker 24-gauge roof. Consequently, while the size and frequency of hail dents across the entire roof of the Property afforded Parker some evidence that the July 4/5, 2016 hailstorm damaged the entire roof, Parker repeatedly and explicitly testified in his deposition that such evidence could not allow him to testify as to which hail dents occurred at what time. If Parker, Generation Trade's expert, cannot testify with any reasonable degree of engineering certainty as to which dents resulted from the July 4/5, 2016 hailstorm as opposed to a hailstorm not covered by the insurance policy, the Court finds that this evidence concerning the size and frequency of hail dents "does not 'afford[] the jury a reasonable basis on which to allocate the damage.'" *Certain Underwriters at Lloyd's of London*, 892 F.3d at 172 (alteration in original) (quoting *Lyons*, 866 S.W.2d at 601).

Cases in which insureds have met their burden to segregate covered damages from non-covered damages are easily distinguishable from the instant case for at least

two reasons. *See, e.g., Fiess*, 392 F.3d at 807–09; *2223 Lombardy Warehouse, LLC v. Mount Vernon Fire Ins. Co.*, Civ. Action No. 3:17-CV-2795-D, 2019 WL 1583558, at *7 (N.D. Tex. Apr. 12, 2019) (Fitzwater, J.). First, in both *Fiess* and *2223 Lombardy Warehouse, LLC*, the insureds' experts testified how a jury might be able to segregate damages. *Fiess*, 392 F.3d at 808 (finding that the insured's expert provided a reasonable basis for allocating damages by testifying (1) that 70% of the mold contamination was covered loss and (2) that covered and non-covered mold contamination were distinguishable based upon certain observations about the damage); *2223 Lombardy Warehouse, LLC*, 2019 WL 1583558, at *7 ("Moreover, [the insured's expert] proposed a methodology for segregating harm that is simple enough for a lay jury to apply (at least roughly): one could start with photographs of areas of the roof that, according to [the expert], are clearly damaged by wear and tear; find those same areas on aerial photographs of the roof; and subtract the approximate percentage of the roof clearly damaged by wear and tear from the remainder of the roof that was damaged by hail." (footnote omitted)). This Court does not hold that Parker must have segregated covered damage from non-covered damage himself. *See 2223 Lombardy Warehouse, LLC*, 2019 WL 1583558, at *7 ("Although [the insured's expert] himself made no attempt to segregate wear-and-tear damage from hail damage, he provided a reasonable basis on which a jury may do so."). However, Parker eschewed proposing a methodology for a

jury to follow to segregate damages, as opposed to the experts of *Fiess* and *2223 Lombardy Warehouse, LLC*.

Second, the Court notes that the court in *2223 Lombardy Warehouse, LLC* had a qualitatively different concurrent causation situation in front of it: The Court there had to deal with determining whether there was some evidence affording a jury a reasonable basis "to segregate wear-and-tear damage from hail damage." *Id.* Here, as Parker acknowledges in his testimony, there is no comparable method to distinguish newer hail dents from older hail dents. In other words, the jury is not trying to distinguish damages from one type of cause as compared to another, but rather damages from one type of cause occurring at two (or more) separate times. When the damage from older hail events produces no observable differences from the damage resulting from more recent (but otherwise similar) hail events, the jury is left with no reasonable basis to segregate damages.

Other evidence that Generation Trade argues serves as some evidence providing a reasonable basis upon which a jury could segregate damages consists of affidavits from Simon and Parker. In Simon's affidavit, Simon states that he "did not personally observe hail damage to the metal roofing system at the property at any time prior to June 2016." GT APP. 000918. In Parker's affidavit, Parker states for the first time that no damage to the roof of the Property is attributable to a non-covered date of loss, and, to the extent there is damage to the roof of the Property from a hailstorm preceding

the inception of the insurance policy, such damage does not exceed 2% of the total damage. GT APP. 001023–24.

OSIC seeks to have these affidavits stricken on the basis that they are "sham affidavits," but, without addressing whether these affidavits are in fact sham affidavits or not, the Court finds that they fail to create a genuine dispute of material fact for a separate reason: These statements in the affidavits are not competent summary-judgment evidence. Under Rule 56, "some metaphysical doubt as to the material facts," "conclusory allegations," and "unsubstantiated assertions" are not competent summary-judgment evidence sufficient to create a genuine issue of material fact. *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (citations omitted).

The statement in Simon's affidavit is insufficient to create a genuine issue of material fact because it only states that Simon did not personally observe hail damage to the roof prior to June 2016. That statement is not synonymous with a statement that Simon did in fact personally inspect the roof prior to June 2016 and observed, for himself, no indications of hail damage. *Cf. Lyons*, 866 S.W.2d at 601 (finding that the insured provided some evidence to allow the jury to segregate damages when the insured and the insured's neighbors testified "that there was no preexisting damage" based upon their own personal observations). If Generation Trade intends Simon's statement to serve for the proposition that there was, in fact, no observable hail damage to the roof of the Property prior to June 2016, that statement would be an

unsubstantiated assertion because Simon does not swear that he did in fact inspect the roof.

Parker's new assertions in his affidavit—that either (1) no hail damage resulted from a noncovered hailstorm or (2) that any damage from a noncovered hailstorm only resulted in 2% of the total damage to the roof—are not competent summary-judgment evidence because these assertions are conclusory. Unlike the conclusions in his report, or the explanation provided in his deposition, Parker provides no reasoning behind these new assertions in his affidavit. "[The Fifth Circuit] ha[s] recognized that there is a level of conclusoriness below which an affidavit must not sink if it is to provide the basis for a genuine issue of material fact." *Orthopedic & Sports Injury Clinic v. Wang Labs., Inc.*, 922 F.2d 220, 224 (5th Cir. 1991). "[A] single conclusory expert affidavit, devoid of any factual support or explanation of the expert's basis for concluding that observed damage occurred as a result of a particular hail storm within the policy period, [is] insufficient to meet Plaintiffs' burden of 'designat[ing] specific facts showing that there is a genuine issue for trial.'" *Stagliano*, 633 F. App'x at 219 (quoting *Davis v. Fort Bend Cty.*, 765 F.3d 480, 484 (5th Cir. 2014) (alternation in original)). Consequently, the Court finds these two assertions from Parker, made for the first time in his affidavit without any explanation as to his underlying reasoning, do not constitute competent summary-judgment evidence that would create a genuine dispute of material fact.

The last pieces of evidence that Generation Trade relies upon in arguing that a genuine dispute of material fact exists on the issue of its burden to segregate covered from noncovered damages are (1) a June 2014 appraisal of the property when Generation Trade was purchasing the Property and (2) a July 2013 risk assessment report for the Property. GT APP. 000753–000913, 001539–44. As OSIC points out in a footnote in its reply, neither of these documents provide support for the assertion that no hail damage existed prior to the inception of the insurance policy. Generation Trade's argument that neither the appraisal company nor the risk inspector "identified any hail or other damage to the roofing system during inspections" is only accurate because neither the appraisal company nor the risk inspector address the roof of the Property in their reports. Generation Trade does not cite to specific portions of either of these reports as support for the proposition that the roof did not have hail damage, and upon the Court's review of these documents, neither the appraisal nor the risk report address the roof of the Property. In fact, the extent of discussion of the roof of the Property by the appraisal company was that the roof was a "[f]lat, built-up roof system," and none of the pictures included in the appraisal were of the roof, save for a picture taken from Google Earth at too high of an altitude to show hail dents or the lack thereof. GT APP. 000800, 000804. For reasons analogous to why the Court finds Simon's statement in his affidavit to not be competent summary-judgment evidence, the Court finds that these reports are not competent summary-judgment evidence to

create a genuine dispute of material fact for Generation Trade's burden to segregate covered from noncovered damages.

Because OSIC has presented evidence that noncovered hail events could have caused some of the damage to the roof of the Property, and Generation Trade has failed to present some evidence that provides a reasonable basis upon which a jury could segregate damages, summary judgment in favor of OSIC on the breach-of-contract claim is appropriate and hereby **granted**.

## 2. Generation Trade's Texas Insurance Code Claims, Negligence Claim, and Request for Attorneys' Fees

In its amended petition, Generation Trade pleads various claims based upon allegations that OSIC violated provisions of the Texas Insurance Code. Because the Court finds that summary judgment in favor of OSIC is appropriate for the breach-of-contract claim, and Generation Trade fails to establish an "independent injury," the Court **grants** summary judgment in favor of OSIC on all of Generation Trade's Insurance Code and negligence claims.

The Court's ruling on Generation Trade's breach-of-contract claim is typically dispositive on whether Generation Trade would have a right to recover for a claim based upon the Insurance Code. *See USAA Tex. Lloyds Co. v. Menchaca*, 545 S.W.3d 479, 495 (Tex. 2018) ("Because an insurer's statutory violation permits an insured to receive only those 'actual damages' that are 'caused by' the violation, we clarify and

affirm the general rule that an insured cannot recover policy benefits as actual damages for an insurer's statutory violation if the insured has no right to those benefits under the policy."). The exception to this general rule, and what the parties address in their briefing in the instant case, is when an insured suffers an "independent injury" from the insurance policy claim. *See id.* at 499–500 (explaining the "independent-injury rule"); *see also Lyda Swinerton Builders, Inc. v. Okla. Sur. Co.*, 903 F.3d 435, 450–53 (5th Cir. 2018) (discussing the effect of *Menchaca* on Insurance Code claims).

The independent-injury rule "derives from the fact that an insurer's extra-contractual liability is 'distinct' from its liability for benefits under the insurance policy." *Menchaca*, 545 S.W.3d at 499. An independent injury may arise when "the insurer . . . commit[s] some act, so extreme, that would cause injury independent of the policy claim." *Id.* (quoting *Republic Ins. Co. v. Stoker*, 903 S.W.2d 338, 341 (Tex. 1995)). The Texas Supreme Court emphasized, however, "that a successful independent-injury claim would be rare," and, as of the date of *Menchaca*, the Texas Supreme Court had yet to encounter a viable independent-injury claim. *Id.* at 500.

Generation Trade claims that it has suffered independent injuries because (1) Generation Trade obtained and paid an attorney to bring suit against OSIC on its behalf and (2) Generation Trade has not been able to maintain its full business operations because of damage to the Property resulting from OSIC's failure to pay the claim. Despite Generation Trade's characterization of these injuries as "separate from"

and "different than" the benefits of the insurance policy, under *Menchaca*, these injuries fall squarely outside of the realm of an independent injury. "[A]n injury is not 'independent' from the insured's right to receive policy benefits if the injury 'flows' or 'stems' from the denial of that right." *Id.* Generation Trade hired an attorney because OSIC denied Generation Trade's policy benefits. Generation Trade also cannot maintain its full operations at the Property because OSIC refused to pay for repairs to the roof. Both of these injuries stem from the denial of Generation Trade's claim, and, therefore, they cannot serve as independent injuries. *See id.*

Generation Trade also cannot recover for any claims under Chapter 542 of the Insurance Code. Generation Trade's claims under this chapter relate to the prompt payment of claims. Liability for a violation of these provisions only exists "if an insurer . . . is liable for a claim under an insurance policy." TEX. INS. CODE ANN. § 542.060(a) (West 2017); *see also Lyda Swinerton Builders, Inc.*, 903 F.3d at 450 ("To recover under the [Prompt Payment of Claims Act], an insured must establish that: '(1) a claim was made under an insurance policy, (2) the insurer is liable for the claim, and (3) the insurer failed to follow one or more sections of the prompt-payment statute with respect to the claim.'" (quoting *United Nat. Ins. Co. v. AMJ Invs., LLC*, 447 S.W.3d 1, 13 (Tex. App.—Houston [14th Dist.] 2014, pet. dism'd))). As OSIC is not liable for Generation Trade's policy claim, Generation Trade's claims under Chapter 542 also fail.

Generation Trade's last claim in its amended petition is for negligence based upon OSIC's inspection and investigation of Generation Trade's policy claim. As OSIC notes, "[i]n essence, Texas law does not recognize a cause of action for negligent claims handling." *Higginbotham v. State Farm Mut. Auto. Ins. Co.*, 103 F.3d 456, 460 (5th Cir. 1997) ("In fact, in absence of the duty to act in good faith and deal fairly the only other duty imposed on an insurance company, under Texas law, is the duty to exercise ordinary care and prudence in considering an offer of settlement within the policy limits."). Generation Trade does not provide any response to this argument in its brief. The Court holds that because Generation Trade's negligence claim arises from OSIC's claim handling, summary judgment in favor of OSIC on Generation Trade's negligence claim is appropriate and hereby **granted**.

In sum, OSIC is entitled to summary judgment on all of Generation Trade's claims, and the Court hereby **grants** the Motion for Summary Judgment and **dismisses with prejudice** all of Generation Trade's claims. Because the Court finds that all of Generation Trade's claims fail to survive summary judgment, the Court **grants** summary judgment in favor of OSIC on Generation Trade's request for attorneys' fees. TEX. INS. CODE ANN. §§ 541.152, 542.060 (West 2019).

## C. Generation Trade's Motion for Leave to File Surreply to Defendant's Motion for Summary Judgment

Generation Trade's basis for its Motion for Leave is that OSIC introduced new evidence in its reply brief, argued for the first time that Generation Trade's affidavits were sham affidavits, and cited to new case law not disclosed in its brief for the Motion for Summary Judgment. In reviewing Generation Trade's proposed surreply, however, the Court notes that Generation Trade devotes the bulk of its argument to explaining why the Simon and Parker affidavits are not sham affidavits and why, even if the Court determined that the affidavits were sham affidavits, other summary-judgment evidence would provide the jury a reasonable basis upon which to segregate damages.

As discussed above, the Court declined to treat the Simon and Parker affidavits as sham affidavits and instead chose not to consider statements from these affidavits that did not rise to the level of competent summary-judgment evidence. Because the parties' arguments concerning the sham-affidavit issue is irrelevant to the Court's decision on the Motion for Summary Judgment, and no newly cited evidence or case law in OSIC's reply pertains to a new basis that OSIC argues should afford it summary judgment, a surreply is unnecessary in this case. *Austin v. Kroger Tex., L.P.*, Civ. Action No. 3:11-CV-1169-B, 2016 WL 1322248, at *1 (N.D. Tex. Apr. 5, 2016) (Boyle, J.) ("[The non-movant] is correct that a district court may not grant summary judgment on grounds raised for the first time in a summary judgment reply and to which the non-

movant has not been able to respond. . . . The decisive question here, then, is whether [the movant] raised the argument at issue in its summary judgment motion."). Even if the Court granted Generation Trade's Motion for Leave, it would not have changed the Court's ultimate decision on the Motion for Summary Judgment. The Court **denies** Generation Trade's Motion for Leave.

IV.     Conclusion

Because the Court **DENIES** the motions to limit and exclude testimony (Doc Nos. 45, 46, 47), either on the merits or as moot, and Generation Trade fails to carry its burden to segregate its damages and did not suffer an independent injury, the Court **GRANTS** the Motion for Summary Judgment. Because Generation Trade's surreply is not warranted in this case, the Court **DENIES** Generation Trade's Motion for Leave. Accordingly, all of Generation Trade's claims are **DISMISSED WITH PREJUDICE**.

**SO ORDERED.**

Signed May 21st, 2019.

_Ed Kinkeade_

ED KINKEADE
UNITED STATES DISTRICT JUDGE