**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | | |
|---|---|---|
| GENERATION TRADE, INC., | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. 3:18-CV-0434-K |
| | § | |
| OHIO SECURITY INSURANCE | § | |
| COMPANY, | § | |
| | § | |
| Defendant. | § | |

## <u>MEMORANDUM OPINION AND ORDER</u>

Before the Court is Plaintiff's Rule 59(e) Motion to Alter or Amend Judgment and/or for Reconsideration (the "Motion") (Doc. No. 76). The Court has carefully considered the Motion, the brief in support of the Motion, the response, the applicable law, and the relevant record. Because Plaintiff Generation Trade, Inc. presents new evidence that creates a genuine dispute of material fact, and because the relevant factors weigh in favor of allowing Plaintiff Generation Trade, Inc. to present this evidence to the Court through a Rule 59(e) motion, the Court **GRANTS** the Motion and hereby **VACATES** its prior judgment in this case (Doc. No. 75).

## I.     Factual and Procedural History

The parties are familiar with the facts underlying this insurance dispute, and the Court has previously set forth the relevant facts in its prior order granting summary judgment (Doc. No. 74). The Court therefore only discusses the new evidence

1

presented by Plaintiff Generation Trade, Inc. ("Generation Trade") and the relevant procedural history of this case that resulted in the Motion that is the subject of this Order.

Defendant Ohio Security Insurance Company ("OSIC") moved for summary judgment on Generation Trade's claims on October 26, 2018, approximately a month and a half before the discovery deadline. Although Generation Trade alleges that it intended to rely upon discovery that had not yet occurred at the time OSIC moved for summary judgment, including depositions conducted by defense counsel, Generation Trade did not request an extension to respond to OSIC's summary-judgment motion and instead filed a timely response. Generation Trade did move for leave to file a surreply on December 4, 2018, and in its proposed surreply, Generation Trade included deposition testimony from Andre Simon ("Simon") (the owner of Generation Trade) and Dan Mizell ("Mizell") (a non-retained expert). Because of some difficulty in scheduling the deposition of Roberto Pasillas ("Pasillas") (a roofing contractor who worked on the roof of the property in this case in May 2016), the deposition of Pasillas did not occur until December 10, 2018, and the transcript of this deposition was not available until December 27, 2018. Pasillas's deposition testimony is the relevant evidence for purposes of this Order.

On May 21, 2019, this Court granted summary judgment in favor of OSIC on Generation Trade's breach-of-contract claim because Generation Trade failed to

present evidence that a genuine dispute of material fact remained on the issue of concurrent causation. In its order, the Court noted that Simon's affidavit did not create a genuine issue of material fact on the concurrent-causation issue. The Court acknowledged that lay-witness testimony about the condition of property prior to an alleged covered loss can create a genuine dispute of material fact on an issue of concurrent causation. Simon, however, did not assert in his affidavit that he had observed the roof of Generation Trade's property at any time prior to the alleged July 4/5, 2016 hailstorm; Simon instead only stated that "[he] did not personally observe hail damage to the metal roofing system at the property at any time prior to June 2016." GT APP 000918. Generation Trade did not provide the Court with any indication that Simon in fact examined the roof in anyway prior to June 2016.

The Court's observation about the phrasing of this statement in Simon's affidavit is important to a discussion of the various testimony from Pasillas. Generation Trade included an affidavit from Pasillas in its appendix in support of its response to the motion for summary judgment. GT APP 000917. In his affidavit, Pasillas explains that he personally was responsible for removing a portion of the older, 24-gauge metal panels from the roof and replacing them with the newer, 26-gauge metal panels. Pasillas states that these new, 26-gauge panels were not damaged and did not have any hail dents at the time he installed them in May 2016. In the fifth paragraph of his affidavit, Pasillas states, "I did not observe any hail damage to the metal panels prior to the July

4/5, 2016 hailstorm." Although this testimony could suggest that Pasillas, who performed this work on the roof in May 2016, would have personally observed the state of the older, 24-gauge metal roof prior to Generation Trade's alleged date of loss, there were three issues with the Court reaching such conclusion at the time of the summary-judgment briefing. First, Generation Trade did not cite to the Pasillas affidavit in its response to the motion for summary judgment as evidence that the roof was not damaged by hail prior to the alleged July 4/5, 2016 hailstorm. Generation Trade only cited this affidavit in its response to the motion for summary judgment as support "that there was no hail damage to the newer panels at the time of installation in May 2016." Second, Pasillas's statement about not observing any hail damage prior to the July 4/5, 2016 hailstorm is, on its face, similar to Simon's statement about Simon's observations: It does not inform the Court whether, and to what extent, Pasillas inspected the older, 24-gauge metal roof. Third, it is unclear from the text of this six-paragraph affidavit what "metal panels" Pasillas was referencing when he stated he did not observe any hail damage. The beginning paragraphs of the affidavit discuss the new, 26-gauge metal panels that Pasillas installed, so this affidavit suggested, especially in light of how Generation Trade cited the affidavit in its response to summary judgment, that Pasillas's observation about the lack of hail damage to the "metal panels" meant the metal panels he installed (i.e., the 26-gauge panels) rather than all the metal panels.

In the instant Motion, Generation Trade produces, for the first time, Pasillas's deposition testimony. Pasillas's deposition testimony provides a more definite picture of what Pasillas observed while he was installing the new, 26-gauge metal panels to the roof. For example, when discussing the portion of the older, 24-gauge metal panels that Pasillas replaced, Pasillas testified that he never saw any hail damage to the older, 24-gauge metal panels he replaced. GT APP 001678–79. When questioned further, Pasillas provided more context. Pasillas confirmed that his statement in his affidavit— that the new, 26-gauge panels were undamaged and had no hail dents when he installed them—was accurate. GT APP 001680. When asked in the next question whether he ever saw any hail damage to the *older* panels, Pasillas responded "no." *Id.* Unlike his affidavit, which appeared to focus on the condition of the *newly* installed panels (as evidenced by the only citation to the affidavit in Generation Trade's response to the motion for summary judgment), the deposition provides evidence that Pasillas observed the condition of the older roof in May 2016 and did not see any hail damage to those *older* metal panels. As discussed below in this Order, this testimony is significant for purposes of the Court's concurrent-causation analysis.

## II.    Applicable Law

"A Rule 59(e) motion 'calls into question the correctness of a judgment.'" *Templet v. HydroChem Inc.*, 367 F.3d 473, 478 (5th Cir. 2004) (quoting *In re Transtexas Gas Corp.*, 303 F.3d 571, 581 (5th Cir. 2002)). A Rule 59(e) "motion is not the proper

vehicle for rehashing evidence, legal theories, or arguments that could have been offered or raised before the entry of judgment." *Id.* at 479. The Fifth Circuit has instead recognized three narrow grounds for a Rule 59(e) motion: (1) "a manifest error of law or fact"; (2) "newly discovered evidence"; and (3) "an intervening change in the controlling law." *Schiller v. Physicians Res. Grp. Inc.*, 342 F.3d 563, 567–68 (5th Cir. 2003) (quoting *Rosenzweig v. Azurix Corp.*, 332 F.3d 854, 863–64 (5th Cir. 2003)). "Rule 59(e) has been interpreted as covering motions to vacate judgments, not just motions to modify or amend." *Edward H. Bohlin Co., Inc. v. Banning Co., Inc.*, 6 F.3d 350, 355 (5th Cir. 1993).

A district court reviewing a Rule 59(e) motion must balance "two important judicial imperatives relating to such a motion: 1) the need to bring litigation to an end; and 2) the need to render just decisions on the basis of all the facts." *Templet*, 367 F.3d at 479. The standard of review that the Fifth Circuit applies when reviewing appeals of decisions on Rule 59(e) motions provides insight into the "considerable," but "not limitless," discretion the district court has in deciding Rule 59(e) motions. *Id.* When the basis for a Rule 59(e) motion is the presentation of new evidence, "if the district court refuses to consider the [new evidence], the reviewing court applies the abuse of discretion standard." *Id.* at 477. The district court's decision about whether to consider the new evidence or not "need only be reasonable." *Id.* If the district court chooses to consider the new evidence but "still grants summary judgment, the appropriate

appellate standard of review is *de novo*." *Id.* "Reconsideration of a judgment after its entry is an extraordinary remedy that should be used sparingly," but there are two steps in the district court's analysis that make this remedy "extraordinary." *Id.* at 479. The first step by the district court is simply whether it should even consider the new evidence, and, in this decision, the district court has "considerable discretion" and must "only be reasonable." *Id.* at 477, 479. At this first step, "[t]he task for the district court is to strike the proper balance between [two] competing interests": "1) the need to bring litigation to an end; and 2) the need to render just decisions on the basis of all the facts." *Id.* at 479. It is only at the second step that the remedy provided by a Rule 59(e) motion potentially becomes "extraordinary" because, upon reconsideration, the finality of the district court's original judgment may be disturbed. *See id.* Despite the fact that Rule 59(e) is an extraordinary remedy, district courts must still consider the propriety of the movant's Rule 59(e) motion to determine if the movant presents one of the "sparing" situations that merit reconsideration of a judgment. *See, e.g., In re La. Crawfish Producers*, 852 F.3d 456, 465–66 (5th Cir. 2017) (holding that "[t]here [were] several factors the district court should have considered when determining whether to grant" a Rule 59(e) motion predicated on the introduction of new evidence); *Luig v. N. Bay Enters., Inc.*, 817 F.3d 901, 906 (5th Cir. 2016) (refusing to affirm the district court's denial of a Rule 59(e) motion on the basis that Rule 59(e) is an "extraordinary remedy that should be used sparingly" when there were "several factors that the district

court should have considered when determining whether to grant [the movant's] 59(e) motion").

## III.  Analysis

Generation Trade moves for reconsideration of the Court's judgment in this case on two grounds: (1) manifest error of law and (2) newly discovered evidence. The Court addresses Generation Trade's first ground for reconsideration (manifest error of law) before turning to the focal point of this Order: Generation Trade's new evidence.

### A. Manifest Error of Law

The Court is not persuaded that it committed a manifest error of law solely based upon Generation Trade's citation to a footnote in *2223 Lombardy Warehouse, LLC v. Mount Vernon Fire Ins. Co.*, Civ. Action No. 3:17-CV-2795-D, 2019 WL 1583558 (N.D. Tex. Apr. 12, 2019) (Fitzwater, J.). As a preliminary note, the Court is unconvinced that a footnote in a sister court's decision can be the basis for a manifest error of law by this Court, and Generation Trade fails to point this Court to any law that would suggest the contrary.

Second, the situation presented in *2223 Lombardy* is not as analogous to the situation in front of this Court as Generation Trade would suggest. The footnote cited by Generation Trade in *2223 Lombardy* explains why the insured's expert's own testimony, which concerned the possibility that a hailstorm prior to the insurance policy's coverage period damaged the property, did not trigger a concurrent-causation

issue but instead presented a credibility issue concerning the insured's expert. *Id.* at *7 n.7. Generation Trade argues this footnote supports its assertion that "submission of testimony of 'possible' damage by the *insurer's* expert is insufficient and can do no more than create a credibility question that must be considered by the trier of fact." (emphasis added). Generation Trade's argument on this issue is misleading for at least two reasons. First, Generation Trade suggests that *all* of OSIC's evidence concerning a hailstorm prior to the insurance policy's inception was analogous to the *insured's* expert's admission that it was "possible" prior hailstorms had damaged the property in *2223 Lombardy*. Second, Generation Trade's argument ultimately conflates the burden of production with the burden of persuasion. The Court addresses these points in turn.

In *2223 Lombardy*, the insured's expert testified to a possibility that prior hailstorms might have damaged the property, but there is no indication that this admission by the insured's expert was supported by any of the expert's investigation, research, or conclusions. *Id.* at *7. The court in *2223 Lombardy* described the insured's expert's investigation and his use of weather radar data only dating back to three years prior to the alleged date of loss. *Id.* The expert's investigation indicated two possible dates for the hailstorms that may have caused the alleged damage, both of which were covered under the applicable policy. *Id.* In other words, the inference from this footnote and the discussion of the insured's expert's investigation is that the insured's expert's *investigation* only found two possible dates for the date of loss, and the insurance policy

covered both these dates. *Id.* Based on the *2223 Lombardy* court's discussion of the expert's investigation, the expert's testimony that it was possible an earlier hailstorm might have damaged the property implies that it was possible a prior storm *outside the scope and timeframe of the expert's investigation* might have resulted in damage to the property. *See id.* There is no discussion that an expert for the *insurer* found evidence of a hailstorm prior to the insurance policy's coverage that might have resulted in at least some of the damage to the property. The *2223 Lombardy* court correctly characterized this testimony from the insured's expert as a credibility issue because it produces a question that the trier of fact must decide: whether the insured's expert's investigation sufficiently accounted for hailstorms prior to the insurance policy's coverage period.

In the case before this Court, the Court relied upon the *insurer's* expert's testimony that certain hailstorms prior to the insurance policy's inception occurred throughout the years, and certain hailstorms could have produced some of the damage to the property's roof. Although Generation Trade repeatedly argues that Timothy Marshall ("Marshall") (OSIC's expert) failed to identify a hailstorm not covered by the insurance policy that damaged the property, Marshall relied upon weather reports in identifying prior hailstorms that had the potential of damaging the property. Marshall's process is therefore similar to both Kelly Parker's ("Parker") (Generation Trade's expert) process, as well as the insured's expert's process in *2223 Lombardy*: All three experts, as a part of their investigations, relied upon weather reports as evidence that a

certain hailstorm damaged the property on certain alleged dates. The reason *2223 Lombardy* is distinguishable from the instant case is because the "possibility" testimony by the insured's expert in *2223 Lombardy* most likely stemmed from the *lack* of an investigation as to certain timeframes by the expert, whereas Marshall's testimony that a storm prior to the insurance policy's inception could have caused some of the damage stems from Marshall's investigation. Had OSIC relied *solely* upon testimony from Parker that hailstorms prior to the insurance policy's inception could have caused the damage, and had Parker's testimony about this "possibility" been only because Parker could not discount such a possibility based on the limited timeframe examined in his investigation, then Generation Trade's situation would be more analogous to the insured's situation in *2223 Lombardy*. Instead, Generation Trade uses the footnote of *2223 Lombardy* to reargue an issue the Court turns to next: the applicable burden on OSIC to establish a non-covered hailstorm at summary judgment.

A recurring argument from Generation Trade has been that Marshall's testimony—that a non-covered storm *could have* caused some of the damage to the property—is not sufficient evidence to satisfy OSIC's burden to establish a non-covered hailstorm caused some of the loss. Therefore, Generation Trade argues that the burden has not shifted back to Generation Trade to produce evidence that would afford a jury a reasonable basis to segregate damages. The Court has addressed this argument previously in its order granting summary judgment, but the Court addresses this issue

again in an effort to elaborate on the relevant law in this case at this procedural posture: the burden of *production* at summary judgment.

In the brief in support of its Motion, Generation Trade makes an argument it has referenced in various filings throughout this case: "the jury cannot determine based upon [evidence from Marshall] that a storm outside the coverage period *more likely than not* caused damage" to the roof of the property. (emphasis added). Generation Trade's use of this language throughout its filings suggests that it does not fully understand how the doctrine of concurrent causation operates under Texas law and the effect of the doctrine when raised during summary judgment.

"[T]he doctrine of concurrent causation is not an affirmative defense or an avoidance issue." *Wallis v. United Servs. Auto. Ass'n*, 2 S.W.3d 300, 303 (Tex. App.—San Antonio 1999, pet. denied). "Because an insured can only recover for covered events, the burden of segregating the damage attributable solely to the covered event is a coverage issue for which the insured carries the burden of proof." *One Way Invs., Inc. v. Century Sur. Co.*, Civ. Action No. 3:14-CV-2839-D, 2016 WL 5122124, at *2 (N.D. Tex. Sept. 21, 2016) (Fitzwater, J.) (citing *Wallis*, 2 S.W.3d at 303). Recognizing that concurrent causation is not an affirmative defense is important in the summary-judgment analysis because it means that a defendant does *not* have to "establish beyond peradventure *all* of the essential elements of the . . . defense to warrant [summary]

judgment in [the movant's] favor." *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1994 (5th Cir. 1986).

Once a party recognizes that the doctrine of concurrent causation is just the "rule which embodies the basic principle that insureds are entitled to recover only that which is covered under their policy," the applicable summary-judgment procedure becomes slightly more straightforward. *Wallis*, 2 S.W.3d at 303. An insurer moves for summary judgment, arguing that an insured cannot produce evidence to satisfy the insured's ultimate burden to allocate its covered loss from its non-covered loss. *See Nat'l Union Fire Ins. of Pittsburgh, Pa. v. Puget Plastics Corp.*, 735 F. Supp. 2d 650, 669 n.23 (S.D. Tex. 2010) (explaining how "[t]he burden of allocation remains with the insured party"). In making its motion, the insurer may choose to *produce* evidence of a non-covered event, which typically is an event not covered either because of the type or date of the event, that contributes to the total loss alleged by the insured, thus invoking the doctrine of concurrent causation. *See id.* ("Thus, under *Wallis, once testimony of concurrent causes has been offered into the record*, the insured has the burden of allocating the damages among the various causes." (emphasis added)); s*ee also Certain Underwriters at Lloyd's of London v. Lowen Valley View, L.L.C.*, 892 F.3d 167, 170 (5th Cir. 2018) ("The summary judgment evidence reveals that several hail storms struck the *vicinity* of the hotel in the several years preceding [the insured's] claim. Only one of these storms fell within the coverage period." (emphasis added)).  Because "[t]he insured bears the

13

burden of establishing that its claim is covered by the policy," the insured then must *produce* evidence that the insured's alleged loss is covered. *Certain Underwriters at Lloyd's of London*, 892 F.3d at 170. Consequently, in cases where the insurer has produced evidence of a non-covered event, because the ultimate burden of proof remains with the insured at trial to prove what percentage of the damage, if any, is covered by the policy, the burden shifts to the insured to *produce* evidence that would allow a jury to segregate covered from non-covered loss. *See Fiess v. State Farm Lloyds*, 392 F.3d 802, 807 (5th Cir. 2004). In other words, the insured must produce evidence supporting one of two alternate theories: (1) evidence that *all* the claimed loss resulted from a covered event or (2) evidence that provides a jury a reasonable basis to segregate covered from non-covered loss. *See Certain Underwriters at Lloyd's of London v. Lowen Valley View, L.L.C.*, Civ. Action No. 3:16-cv-0465-B, 2017 WL 3115142, at *9 (N.D. Tex. July 7, 2017) (Boyle, J.) *aff'd*, 892 F.3d 167 (5th Cir. 2018) ("As discussed below, however, neither these documents nor any other evidence submitted by [the insured] raise a genuine issue of material fact as to whether the damage was entirely due to the June 13, 2012 storm or from which a jury could reasonably segregate the damages between storms."). Because the burden of *persuasion* is not on the insurer to prove a non-covered event, after the insurer produces competent summary-judgment evidence that a non-covered event could have contributed to the total loss alleged by insured, the insured must produce evidence that a fact question remains concerning the

concurrent-causation issue. *See Bayle v. Allstate Ins. Co.*, 615 F.3d 350, 355–60 (5th Cir. 2010) (explaining the "simple, burden-shifting minuet" that "arises from the effect of summary judgment on the burdens of production and not any shift between the parties' respective burdens of persuasion" in an insurance case under analogous Louisiana law); *Bodenheimer v. PPG Indus., Inc.*, 5 F.3d 955, 957–58 (5th Cir. 1993) (explaining the Fifth Circuit's approach to an analogous situation presented in summary judgment for federal cases concerning employment discrimination, where it is the court's responsibility to "assess whether [an employee] has tendered factual evidence that would lead a jury to reasonably conclude that [an employer's] reasons are a pretext for . . . discrimination").

The effect in this case was that on the evidence before the Court during the briefing for summary judgment, Generation Trade failed to produce competent, summary-judgment evidence (as is its burden at summary judgment) that demonstrated a genuine dispute of material fact remained in at least one of two ways: (1) that all the damage resulted from the July 4/5, 2016 hailstorm or (2) that there was a reasonable basis for a jury to segregate covered hail damage from non-covered hail damage (i.e., hail dents that either preceded or followed the insurance policy's inception). For these reasons, the Court did not commit a manifest error of law.

### B. Newly Discovered Evidence

The Court has discussed the substance of Generation Trade's "newly discovered evidence" (Roberto Pasillas's deposition testimony) in the factual background of this Order. The Court therefore turns to the relevant analysis of whether the Court should allow Generation Trade to present this evidence at this procedural posture and, if considered, whether Pasillas's deposition testimony creates a genuine dispute of material fact such that the Court should vacate its judgment in this case.

The discovery of new evidence does not necessarily justify relief under Rule 59(e). *Molina v. Equistar Chems. LP*, 261 F. App'x 729, 734 (5th Cir. 2008) (denying Rule 59(e) relief without considering the effect of the newly discovered evidence because the movant could have procured the evidence in a timely fashion). The value of the newly discovered evidence produced by the movant is not the dipositive factor when determining whether to grant a Rule 59(e) motion; it is only one factor a court should consider. *Templet*, 367 F.3d at 477–78. In fact, "an unexcused failure to present evidence available at the time of summary judgment provides a valid basis for denying a subsequent motion for reconsideration." *Id.* at 479 (citing *Russ v. Int'l Paper Co.*, 943 F.2d 589, 593 (5th Cir. 1991)). Courts in this District have often emphasized that evidence is not "newly discovered" for purposes of Rule 59(e) when the movant could have procured the evidence through proper diligence or a request for additional time from the court. *See, e.g., Davila v. Walmart Stores, Inc.*, Civ. Action No. 3:15-CV-2874-

D, 2017 WL 1509303, at *3–*4 (N.D. Tex. Apr. 27, 2017) (Fitzwater, J.) ("Nor does [the movant] assert that, despite his exercise of due diligence, he could not find the statement before summary judgment."); *Ayala v. Ledezma*, Civ. Action No. 3:13-cv-703-O, 2014 WL 11456584, at *1 (N.D. Tex. Aug. 15, 2014) (O'Connor, J.) ("Evidence does not amount to 'newly discovered evidence' under Rule 59(e) where a plaintiff could have pursued discovery earlier by proper diligence or asked the court for additional time but did not."); *Riddle v. DynCorp Int'l Inc.*, 773 F. Supp. 2d 647, 649 (N.D. Tex. 2011) (Lindsay, J.); *see also Infusion Res., Inc. v. Minimed, Inc.*, 351 F.3d 688, 696–97 (5th Cir. 2003) ("This Court has held that a 59(e) motion to reconsider should not be granted unless: (1) the facts discovered are of such a nature that they would probably change the outcome; (2) the facts alleged are actually newly discovered and could not have been discovered earlier by proper diligence; and (3) the facts are not merely cumulative or impeaching.").

Despite the emphasis on timely production of relevant evidence during the summary-judgment briefing, the Fifth Circuit has recently clarified the general rule that "an unexcused failure to present evidence available at the time of summary judgment provides a valid basis for denying a subsequent motion for reconsideration." *Luig,* 817 F.3d at 906–07 (quoting *Templet,* 367 F.3d at 479). The keyword of this rule, according to the Fifth Circuit, is "the qualification that the failure to present the evidence be 'unexcused.'" *Id.* Rather than focus solely on the timeliness of the evidence and the

movant's diligence (or lack thereof) in pursuing the evidence, the Fifth Circuit reiterated the four factors a district court should consider for a Rule 59(e) motion that presents new evidence: "(1) the probative value of the evidence, (2) whether the evidence was available to [the movant] at the time of the summary judgement motion, (3) the reason that [the movant] did not present the evidence before summary judgment was effectively granted, and (4) potential prejudice to [the non-movant]." *Id.* at 906 (citing *Templet*, 367 F.3d at 478); *see also In re La. Crawfish Producers*, 852 F.3d at 466 (reaffirming the relevant four factors a district court should consider for Rule 59(e) motions presenting new evidence). "These factors . . . are simply illustrative and not exhaustive. . . . Rule 59(e) motions provide the district court with 'considerable discretion.'" *ICEE Distribs., Inc. v. J&J Snack Foods Corp.*, 445 F.3d 841, 848 (5th Cir. 2006) (quoting *Templet*, 367 F.3d at 482–83 (Dennis, J., dissenting)). The Court thus analyzes Pasillas's deposition testimony under each factor in turn.

The first factor is "the probative value of the evidence." *Luig*, 817 F.3d at 906. The Court finds Pasillas's deposition testimony highly probative to the issue of concurrent causation. The testimony from Pasillas is clearly supportive of one of the two arguments that would demonstrate a genuine dispute of material fact on the issue of concurrent causation: Generation Trade's position that the roof of the property was undamaged prior to the July 4/5, 2016 hailstorm. Although the excerpts of the deposition testimony presented to the Court, which is only five pages of the larger

transcript, could more explicitly describe how Pasillas both examined the older, 24-gauge roof *and* saw no indication of hail damage, the portions of the transcript provided, construed in the light most favorable to Generation Trade, are enough to create at least an inference that a genuine dispute of material fact exists. *See Boudreaux v. Swift Transp. Co., Inc.*, 402 F.3d 536, 540 (5th Cir. 2005) (discussing the deferential review of the facts and inferences in favor of the non-movant at summary judgment). The Court finds this evidence probative for another reason: At least as it appears at this stage of the litigation, Pasillas is the only witness who can speak to the condition of the roof in the timeframe between the inception of the insurance policy and Generation Trade's alleged date of loss *because Pasillas is the only witness that observed the roof in that timeframe*. For these two reasons, the Court finds that the first factor weighs strongly in favor of granting Generation Trade's Rule 59(e) motion.

The Court addresses the second and third factors together, as both factors relate to the *timing* of the evidence's discovery and presentation to this Court. As a preliminary note, the Court recognizes that the Fifth Circuit has used slightly different language when evaluating the "availability" of the evidence to the Rule 59(e) movant. *Compare ICEE Distribs.*, 445 F.3d at 848 (stating that the relevant factor addresses "whether the evidence was available to the [Rule 59(e)] movant *before the nonmovant filed the summary judgment motion*" (emphasis added)) *with Templet*, 367 F.3d at 478 (stating that the same factor addresses "whether the evidence was available to the non-

19

movant [at summary judgment] *before it responded to the summary judgment motion*" (emphasis added)). Because "[t]hese factors . . . are simply illustrative and not exhaustive" of the larger Rule 59(e) analysis, the Court addresses the timing of Pasillas's deposition, as well as Generation Trade's failure to present it to the Court until after the Court entered its judgment, in the broader context of the schedule and progression of the litigation in this case. *See ICEE Distribs.*, 445 F.3d at 848.

Generation Trade points to the Court's scheduling order and the timing of OSIC's motion for summary judgment as the reason why Generation Trade could not timely present Pasillas's deposition testimony to the Court. For example, scheduling Pasillas's deposition proved troublesome for the parties, as Pasillas missed his first scheduled deposition, and the deposition only occurred on the last day of discovery. The transcript was not available until December 27, 2018. Consequently, Generation Trade had filed both its response and its motion requesting leave to file a surreply prior to Pasillas's deposition occurring. Therefore, based solely upon the briefing schedule for summary judgment, Pasillas's deposition testimony was not available to Generation Trade during the briefing for summary judgment.

The Court's scheduling order, coupled with OSIC's early motion for summary judgment, is only part of the story that explains why the Court did not have Pasillas's deposition testimony during the summary-judgment briefing. Generation Trade is also responsible to a large extent for its failure to timely produce this evidence.

First, Generation Trade was not unaware of this evidence when briefing for summary judgment occurred. Generation Trade had an affidavit from Pasillas that Pasillas executed on August 29, 2018, approximately two months prior to OSIC's motion for summary judgment. Perhaps because Generation Trade erroneously believed that other evidence it had would suffice to support its position on the issue of concurrent causation, the affidavit for Pasillas addressed the condition of the newer, 26-gauge metal panels rather than Pasillas's observations concerning the older, 24-gauge metal panels. (As discussed previously in this Order, Generation Trade's intended use for this affidavit is evidenced by the fact that Generation Trade only cited Pasillas's affidavit as support for the assertion that the newer, 26-gauge metal panels were undamaged at the time Pasillas installed these new panels.) In other words, although Pasillas's deposition testimony was not available during the briefing for summary judgment, Generation Trade knew of Pasillas and the nature of his work (and, consequently, his observations of the roof) prior to summary-judgment briefing. Generation Trade simply chose not to use its evidence from Pasillas in the manner for which Generation Trade seeks to do now through Pasillas's deposition testimony.

Second, Generation Trade cannot solely ascribe its default to OSIC's early motion for summary judgment because Generation Trade had other means to ensure that it could present the deposition testimony to the Court. OSIC filed its motion for summary judgment over two months before the dispositive-motion deadline and

approximately six weeks before the close of discovery. If Generation Trade believed that certain, unconducted discovery was necessary for its response to OSIC's motion for summary judgment, Generation Trade could have requested an extension to the deadline to file its response to the motion for summary judgment. *See Ayala*, 2014 WL 11456584, at *1 ("Evidence does not amount to 'newly discovered evidence' under Rule 59(e) where a plaintiff could have pursued discovery earlier by proper diligence or asked the court for additional time but did not."). Generation Trade never requested an extension to its response deadline because of the ongoing discovery. Furthermore, while the deposition testimony was unavailable at the time Generation Trade filed both its response to summary judgment and proposed surreply, almost five months elapsed between the date the transcript of Pasillas's deposition became available and the date this Court granted summary judgment in favor of OSIC. Generation Trade may not have been able to produce the deposition testimony during the briefing period for summary judgment, but Generation Trade did not request leave to present this evidence to the Court once it became available, and now only presents it to this Court after the Court entered its judgment on this case. *See* Local Rule 56.7 ("Except for the motions, responses, replies, briefs, and appendices required by these rules, a party may not, *without the permission of the presiding judge*, file supplemental pleadings, briefs, authorities, or *evidence*." (emphases added)).

In analyzing the second and third factors for the Rule 59(e) analysis concerning this new evidence, the Court finds that these two factors weigh slightly in favor of denying the Motion. While the deposition testimony was not available at the time of the parties' briefing for summary judgment, Generation Trade was aware of the substance of the evidence Pasillas could have provided prior to OSIC's motion for summary judgment. Thus, the second factor weighs slightly in favor of denying the Motion. Generation Trade also did not attempt to provide the Court with this evidence at any time during the approximately five-month interim period between the deposition transcript becoming available and this Court granting summary judgment. Recognizing that Generation Trade may not have wanted to file supplemental evidence it believed to be potentially cumulative, the Court finds the third factor weighs in favor of denying the Motion, but only slightly.

The Court pauses in its analysis of the Rule 59(e) factors to reiterate that these four factors are only "illustrative"; these factors assist a district court by providing guidance in how the district court might exercise its "considerable discretion." *See ICEE Distribs.*, 445 F.3d at 848. Accordingly, while the second and third illustrative factors in this case may, on their face, suggest that the Court might deny the Motion, the Court does not find that these two factors outweigh the probative value of Pasillas's deposition testimony. Therefore, while the Court does not approve of how Generation Trade decided to introduce Pasillas's deposition testimony to the Court, the Court does

not find Generation Trade's default egregious enough to deny reconsideration on that basis alone.

The Court turns to the fourth and final illustrative factor in the Rule 59(e) analysis: potential prejudice to OSIC. In more specific terms, the inquiry is whether OSIC "will suffer *unfair* prejudice if the case is reopened." *Templet*, 367 F.3d at 478 (emphasis added). The prejudice to OSIC is that it now must defend this case at trial rather than benefit from a disposition of the case at summary judgment. The Court does not find this prejudice "unfair" enough to justify a denial of the Motion, particularly in light of the significant probative value of Pasillas's deposition testimony. Again, the Court emphasizes that, at least as presented in the summary-judgment evidence, Pasillas was the *only* witness who climbed onto the roof and observed the condition of the older metal panels in the time span between the inception of the insurance policy and Generation Trade's alleged date of loss; no other witness, for either party, offers similar evidence. Because the Court granted summary judgment after the parties filed pretrial materials, much of the necessary expense that precedes trial has already occurred. The expense and burden of a trial, when a genuine dispute of material fact now exists in this case, is not so unfairly prejudicial as to decline Generation Trade an opportunity to present its case at trial.

For the reasons explained in its discussion of the Rule 59(e) factors above, the Court finds that reconsideration of its May 21, 2019 judgment is appropriate. Because

of the significant probative value of the evidence, the other three factors do not weigh strongly enough against reconsideration under Rule 59(e) to prevent this Court from exercising its "considerable discretion" to vacate its May 21, 2019 judgment in this case. *ICEE Distribs.*, 445 F.3d at 848; *see also In re La. Crawfish Producers*, 852 F.3d at 466–69 (finding the district court abused its discretion when it denied a Rule 59(e) motion premised upon new evidence); *Luig*, 817 F.3d at 905–07 (emphasizing the "probative evidence in [the movant's] 59(e) motion" in holding that the district abused its discretion by denying the motion to reconsider).

## C. The Effect of the Court's Reconsideration

Up to this point in this Order, the Court has addressed why reconsideration is appropriate under Rule 59(e); however, the Court must now briefly address whether summary judgment is still appropriate on any grounds, taking into consideration the new evidence (Pasillas's deposition testimony) that Generation Trade has presented. *See Templet*, 367 F.3d at 477 (discussing the two standards of review the Fifth Circuit employs on appeal of a denied Rule 59(e) motion after summary judgment has been granted, which is "abuse of discretion" for a decision not to consider the new evidence, and "*de novo*" for a decision in which the district court considers the evidence and still *grants* summary judgment). Because the Court ultimately finds that genuine disputes of material fact exist, the Court only briefly addresses OSIC's two grounds for summary

judgment on Generation Trade's breach-of-contract claim and the effect of the Court's decision on Generation Trade's other claims.

The bulk of this Order addresses OSIC's concurrent-causation basis for why summary judgment is appropriate. Because Pasillas's deposition testimony is competent summary-judgment evidence that addresses the condition of the roof at a time shortly before the alleged July 4/5, 2016 hailstorm, Generation Trade has satisfied its burden of proving that a genuine dispute of material fact exists on the issue of concurrent causation. Therefore, summary judgment based on OSIC's ground of concurrent causation is inappropriate now.

OSIC also moved for summary judgment on the basis that Generation Trade's failure to provide "prompt notice" prejudiced OSIC. Summary judgment based on this argument is only appropriate when (1) notice is not prompt as a matter of law and (2) the insured's failure to provide prompt notice prejudiced the insurer. *See Hamilton Props. v. Am. Ins. Co.*, 643 F. App'x 437, 440–41 (5th Cir. 2016). Notice is not prompt as a matter of law when the insured provides no explanation justifying the insured's delay in providing notice. *See id.* at 440. In its response to summary judgment, Generation Trade provides no explanation for the approximately year delay in reporting the damage. Instead, Generation Trade argues that OSIC was not prejudiced by the delay, and, as both parties concede, "the existence of prejudice is generally a question of fact." *Hamilton Props. v. Am. Ins. Co.*, Civ. Action No. 3:12–CV–5046–B,

2014 WL 3055801, at *9 (N.D. Tex. July 7, 2014) (Boyle, J.). Based upon the record in front of the Court concerning OSIC's investigation of the property, and taking the evidence in the light most favorable to Generation Trade, the Court believes that this case is not the rare case where "the undisputed facts establish prejudice sufficient to relieve an insurer of its obligations." *St. Paul Guardian Ins. Co. v. Centrum G.S. Ltd.*, 383 F. Supp. 2d 891, 902 (N.D. Tex. 2003) (Lindsay, J.). Therefore, summary judgment on this basis is inappropriate.

The summary judgment granted against Generation Trade on its other claims, other than the negligence claim that even Generation Trade had abandoned by the time the parties filed their Joint Pre-Trial Order (Doc. No. 62), depended upon the Court's analysis that summary judgment on the breach-of-contract claim was appropriate. Because the Court is no longer granting summary judgment in favor of OSIC on the breach-of-contract claim, the Court finds that summary judgment on the accompanying Texas Insurance Code claims is inappropriate.

**IV.     Conclusion**

Because the Court finds it appropriate to consider the new evidence presented by Generation Trade, and because, after considering the new evidence, the Court finds that genuine disputes of material fact exist in this case, the Court **VACATES** its May 21, 2019 judgment in this case. The Court will issue separate orders controlling any new scheduling matters in this case.

**SO ORDERED.**

Signed August 6th, 2019.

_Ed Kinkeade_
ED KINKEADE
UNITED STATES DISTRICT JUDGE